JERDEE, Appellant, vs. FURBUSH, Respondent.

*September 5 — September 23, 1902.*

*Homestead: Conveyance without wife's signature: Rights of grantee.*

The disability of the husband under sec. 2203, Stats. 1898,— which provides that no alienation by a married man of his homestead shall be valid or of any effect without the signature of his wife,— extends only to such alienation of the land as interferes with its use as a homestead, and a deed executed by him alone will convey an equitable interest entitling the grantee to the legal title when the homestead right ceases.

APPEAL from an order of the circuit court for Polk county: A. J. VINJE, Circuit Judge. *Reversed.*

Action for specific performance. The complaint, by appropriate allegations, set forth the following: Daniel F. Smith, a married man living separate and apart from his wife, and the owner of a homestead in this state upon which he resided, in 1892, for a valuable consideration, in form by warranty deed, conveyed such homestead to Henry B. Dike and plaintiff. Smith's wife refused to join in the deed. Subsequently they died, he surviving her about two years. Before the commencement of this action Dike conveyed his interest in the land to plaintiff. Smith left surviving him but one child, the person named as defendant. The deed, though void as a conveyance of the legal title, was good as a contract to convey after the extinguishment of the homestead right of the grantor and his wife. Such homestead right was extinguished by their death, and the legal title to the land became vested in the defendant, in trust, however, for the equitable owner, under the deed. The prayer of the complaint was, in effect, for a decree declaring the deed good as an agreement to convey upon the extinguishment of the homestead right; that such right was extinguished by the death of Smith and his wife; that plaintiff was entitled to have the contract specifically performed by a conveyance from defendant, and to a decree requiring the making of such conveyance accordingly.

Defendant interposed a general demurrer to the complaint, which was sustained, and plaintiff appealed.

For the appellant there was a brief by *Sanborn, Luse & Powell,* and oral argument by *A. L. Sanborn* and *J. B. Sanborn.*

*W. M. Bowe,* for the respondent.

Marshall, J. The question presented here may properly be stated thus: Does sec. 2203, Stats. 1898, in terms providing that no mortgage or other alienation by a married man of his homestead, exempt by law from execution, shall be valid or of any effect as to such homestead without the signature of

his wife, deal merely with the homestead as a privilege, right, or interest in land, enabling the persons whom the statute was designed to protect to enjoy the property as a home, leaving the husband free to deal with it in any way he may see fit not inconsistent with the homestead right? We cannot at this late day decide that as a new question. If it were otherwise, a different result of this appeal might occur than the one we have decided upon. In *Conrad v. Schwamb,* 53 Wis. 372, 10 N. W. 395, it was in effect held that the statutory disability of the husband goes only to such dealings with the land used as a homestead as interferes with such use, and that a deed executed by him alone, construed as a contract to convey after the extinguishment of the homestead right, does not so interfere. In *Ferguson v. Mason,* 60 Wis. 377, 19 N. W. 420, the court attempted to carefully consider sec. 2203, Stats. 1898, and all arguments that could reasonably be advanced, based upon other statutes relating to the subject of homestead, in support of the theory that the disability of the husband under such section goes to the entire property in the land, legal and equitable, resulting in a decision in favor of the affirmative of the question we have stated, that is, that such section uses the term "homestead" as descriptive of a right in land, a privilege to use it as a home, and that an equitable interest therein may be conveyed by the sole act of the husband, an interest entitling the grantee to the legal title to the land upon the termination of the homestead privilege. It was said that the statute must be construed as preventing him from conveying the legal title *in præsenti,* or conveying a future estate in fee simple, because such an interest would enable the owner thereof to seriously prejudice the enjoyment of the homestead right; but that the mere conveyance of an equitable interest, enabling the vendee to call for the legal title upon the termination of the homestead right, does not have that effect. In that the court followed judicial decisions made under statutes more or less similar to ours (*Jewett v. Brock,*

32 Vt. 65; *Whiteman v. Field,* 53 Vt. 554; *Gee v. Moore,* 14 Cal. 476; *McQuade v. Whaley,* 31 Cal. 533; *Smith v. Provin,* 4 Allen, 516; *Doyle v. Coburn,* 6 Allen, 71; *Stewart v. Mackey,* 16 Tex. 56) in preference to decisions to the contrary under like statutes (*Phillips v. Stauch,* 20 Mich. 369; *Hall v. Loomis,* 63 Mich. 709, 30 N. W. 374; *Barton v. Drake,* 21 Minn. 299; *Weitzner v. Thingstad,* 55 Minn. 244, 56 N. W. 817; *Clarke v. Koenig,* 36 Neb. 572, 54 N. W. 842; *Alford v. Lehman, Durr & Co.* 76 Ala. 526; *Pipkin v. Williams,* 57 Ark. 242, 21 S. W. 433). The former authorities are to the effect that a married man may make a good conveyance of the legal title to land affected by the homestead right, subject to the enjoyment of such right. This court did not go quite that far, as we have seen, holding that the furthest the husband can go, acting alone, is to make an executory contract binding the legal title in equity upon the satisfaction of the homestead privilege, and that a conveyance in form conveying the legal title should be given effect only as a conveyance of such equitable interest.

Many courts have gone so far as to hold that such a contract is not good for any purpose whatever; that the vendee therein can neither obtain the legal title to the premises under it in any situation, nor maintain an action against the vendor to recover the consideration paid. One of the most significant of such cases is *Weitzner v. Thingstad, supra.* However, the idea that the homestead which the husband cannot convey except in the manner indicated in sec. 2203 is a mere right in land, and that the creation of an equitable right to the legal title, upon the termination of the homestead privilege, does not interfere with the latter interest and therefore may be created, was ingrafted upon and made a part of our statute, sec. 2203, as we have indicated, and the decisions of this court, in every instance where the subject has come up since that time, have been in harmony therewith. *In re Root's Will,* 81 Wis. 263, 267, 51 N. W. 435; *Whitmore v.*

*Hay,* 85 Wis. 240, 55 N. W. 708; *Town v. Gensch,* 101 Wis. 445, 76 N. W. 1096, 77 N. W. 893. The law has thus stood for nearly a quarter of a century, and whether the court's construction of the statute was right or wrong it must now be considered the law the same as if the idea involved were literally expressed in the statute. It relates to property. It has become, by the lapse of time, a rule of property, which, by well-settled principles, can only be rightly changed by legislative enactment. That branch of the government has had ample opportunity to consider the subject, and though the statutes have been carefully revised in recent years, no attempt has been made to change the nature of the statutory homestead as declared by this court. It may be that the statutes ought to be changed so that the meaning of the term "homestead," where it occurs in the exemption clause, which unquestionably covers the whole title to the land, will be unmistakably identical with the homestead which the husband cannot alienate without the consent of his wife in the manner indicated in sec. 2203, and with the homestead which, under sec. 2271, Stats. 1898, if the owner dies not having fully devised the same, descends free from all judgments or claims against him except as therein indicated, to the end that all conveyances by a married man of his homestead or any interest therein, legal or equitable, present or future, by deed or otherwise, without his wife's consent, evidenced by her act of joining in the deed, shall be of no effect whatever. It seems that nothing short of that will efficiently preserve the property chosen by the husband for the family home, for the benefit of himself and family, till such time as he sees fit to abandon it as such.

It follows from what has been said that *Conrad v. Schwamb,* 53 Wis. 372, 10 N. W. 395, and *Ferguson v. Mason,* 60 Wis. 377, 19 N. W. 420, rule this case. To try to distinguish one case from another upon the facts, where the ruling principles in one are plainly identical with those

in the other, creates uncertainty and confusion in the law. That should be avoided as to any subject, but particularly in respect to titles to real property. True, as counsel contends, in *Conrad v. Schwamb* the wife intended to sign a deed conveying the homestead lands, but by mistake other lands were described in the paper, while in this case the wife refused to sign the deed. But the decision went solely upon the ground that the statute deals only with a homestead right in land, and that the wife's signature is not essential to a conveyance of an interest in the land which does not disturb such right. The principles of law upon which a decision is based are necessarily a part of the decision. *Case v. Hoffman,* 100 Wis. 314, 318, 75 N. W. 945; Wells, Res Jud. § 217; *Trustees v. Stocker,* 42 N. J. Law, 115. There can be no mistaking the significance of this language in the *Conrad Case:*

"The deed of 1863, executed by John Felton and wife to the defendant Schwamb, although it did not convey the land intended, must be treated in equity as an executory contract by John Felton to convey such land. While the land intended to be conveyed remained the homestead of Felton and wife, the defendant could not have enforced specific performance of such executory contract. . . . But it was undoubtedly a valid contract, for the breach of which Felton would probably have been liable to respond in damages to Schwamb. . . . No good reason is perceived why Schwamb might not have maintained an action for specific performance of such contract against John Felton, whenever it was in the power of Felton to convey the land bargained for."

No significance is given, it will be seen, to the mere fact that the wife assented to the making of the deed. The law was declared the same as it would have been had the wife not been a party to the transaction at all. The idea expressed is that the homestead right of the statute under sec. 2203 is one thing, and the land subject to that right another, and that it is the former interest in the realty to which the disability of the husband relates. That was brought out with unmistak-

able clearness in the later case of *Ferguson v. Mason, supra,* as we have seen.

In the light of the foregoing we cannot escape the conclusion that our statute, sec. 2203, as we are bound to view it at this time, does not preclude a married man, by deed or contract executed by him alone, from conveying an equitable right to the legal title to the lands used as the homestead for himself and wife at the time of such conveyance, upon the extinguishment of the homestead right by the death of the wife or otherwise; and that the deed in question in this case must be held good as such a conveyance and enforced against respondent, who became possessed of the legal title to the homestead lands upon the death of her father. That requires a reversal of the order appealed from.

*By the Court.*—The order appealed from is reversed, and the cause remanded with directions to overrule the demurrer and for further proceedings according to law.